# JOHN BOLTZ v. ARMOUR AGRICULTURAL CHEMICAL COMPANY.

131 N. W. (2d) 624.

November 25, 1964—No. 38,928.

*Mahoney & Mahoney,* for relator.

*Plunkett & Peterson,* for respondent.

*Walter F. Mondale,* Attorney General, and *James A. Anderson,* Special Assistant Attorney General, for custodian of the special compensation fund.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review an order of the Industrial Commission dated October 2, 1962, wherein it denied the petition of employer-relator, Armour Agricultural Chemical Company, made pursuant to Minn. St. 176.13(a, b, c),[1] to join the special compensation fund as an

---

[1]Minn. St. 176.13(a) provides: "If an employee who has a physical impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment resulting in compensation liability for permanent or temporary partial or total disability that is substantially greater by reason of the combined effects of the pre-existing impairment and subsequent injury than that which would have resulted from the subsequent injury alone in the absence of the pre-existing impairment, the employer or his insurance carrier shall in the first instance pay all compensation provided by this chapter, but such employer or his insurance carrier shall be reimbursed from the special compensation fund for all compensation subsequent to those payable for the first 104 weeks of disability * * *."

Minn. St. 176.13(b) provides: "If the subsequent injury of such an employee [with previous physical impairment] shall result in the death or permanent partial or total disability of the employee and it shall be determined that either the injury, death or disability would not have occurred except from pre-existing physical impairment, the employer or his insurance carrier shall in the first instance pay the compensation prescribed by this chapter, but he or his insurance carrier shall be reimbursed from the special compensation fund for all compensation payable in excess of 104 weeks."

Minn. St. 176.13(c) provides in part: "In order to qualify under this section for reimbursement from the special compensation fund, the employer must have qualified with the provisions of this chapter as to insurance or self-insurance as provided for by section 176.181, subdivisions 1 and 2, and * * * must register with the industrial commission, in advance of any subsequent injury, under rules prescribed by the industrial commission, the names of his employees with a pre-existing physical impairment,

additional party in these proceedings instituted by relator's employee, John Boltz.

In a memorandum accompanying this order, the commission stated·

"There was no registration as required by the statute [Minn. St. 176.13], and the liability of the Special Compensation Fund cannot be involved here."

The facts are as follows: On April 9, 1952, the employee was injured in an accident arising out of his employment by Armour Fertilizer Works, a division of Armour and Company. This accident resulted in payment of compensation to the employee for 35-percent permanent partial disability.

Subsequently, in 1955, the employee was employed by relator, another division of Armour and Company. It is undisputed that the records of the Industrial Commission disclose that on September 28, 1955, both the commission and relator had knowledge of the employee's preexisting physical impairment. On September 2, 1959, approximately 4 years later, while still employed by relator, the employee sustained injuries to his back in a new accident arising out of his employment, for which he filed a claim for compensation with the commission on November 9, 1959. On March 28, 1960, the commission awarded him further compensation based upon its finding of *temporary* total disability. On January 4, 1962, the employee filed an amended petition claiming compensation for *permanent* total disability resulting from the September 2, 1959, accident. Shortly thereafter and pursuant to § 176.13(a, b, c), relator filed the present petition with the commission for an order joining the special compensation fund in these proceedings so that relator might have reimbursement for any compensation it may be required to pay the employee in excess of 104

together with satisfactory evidence of such impairment, and for whom he may want to claim reimbursement for any compensation paid in event of a subsequent injury or death. * * * In the event of a subsequent injury or death for which reimbursement is claimed, the employer or his insurer shall file with the industrial commission written notice of intention to claim reimbursement within 52 weeks after the occurrence of the subsequent injury * * *."

weeks for permanent total disability by reason of the combined effect of the September 2, 1959, accident and the preexisting physical impairment of the employee. Subsequently, the attorney general for the State of Minnesota, on behalf of the treasurer of the State of Minnesota as custodian of the special compensation fund,[2] appeared before the commission and interposed a memorandum opposing joinder of the special compensation fund on the ground that the employee's preexisting physical impairment had not been properly registered with the commission by the relator pursuant to § 176.13(c) and did not fall within any exceptions therein, so that in consequence there was no liability on the part of the special compensation fund to make reimbursement to relator.

It should be noted that the provisions under § 176.13(a, b, c) which authorize reimbursement to employers for compensation payments in excess of 104 weeks when made to employees with preexisting physical impairments at the time of employment did not become effective until April 29, 1957. Prior thereto, if an employee received an injury in the course of employment which of itself would have caused only permanent partial disability, but which, combined with a previous disability,[3] caused permanent total disability, his new employer became liable for only the permanent partial disability caused by the

---

[2] Minn. St. 176.13 provides in part: "The state treasurer shall be the custodian of this special fund and the industrial commission shall direct the distribution thereof, the same to be paid as other payments of compensation are paid."

[3] Minn. St. 1953, § 176.13, before its amendment provided in part as follows: "If an employee receives an injury which of itself would cause only permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury.

"(a) In addition to compensation for such permanent partial disability and after the cessation of the payments for the prescribed period of weeks, the employee shall be paid by the state the remainder of the compensation that would be due for permanent total disability, as provided for by section 176.101, subdivision 3(1-42 inclusive), out of a special fund known as the special compensation fund."

subsequent injury. The employee, however, could obtain the difference from the special compensation fund up to certain limitations prescribed in this section.

On October 2, 1962, the commission denied relator's petition to join the special compensation fund on the ground, as noted above, that prior to the subsequent injury relator had never registered the name and preexisting physical impairment of this employee as required by § 176.13(c). On appeal relator contends that, notwithstanding this, since the name of the employee and satisfactory evidence of his preexisting physical impairment were known to the commission and to it prior to the subsequent injury, by virtue of the previous payment of compensation, its failure to formally register such information with the commission in advance of the subsequent injury should not bar it from obtaining reimbursement from the special compensation fund, particularly where there was no requirement for such registration at the time the employee was hired by relator.

■ On numerous occasions this court has held that the workmen's compensation statutes in effect at the time of an employee's injury or death govern rights to compensation therefor, Skjefstad v. Red Wing Potteries, Inc. 240 Minn. 38, 60 N. W. (2d) 1; Yaeger v. Delano Granite Works, 250 Minn. 303, 84 N. W. (2d) 363; Kress v. Minneapolis-Moline Co. 258 Minn. 1, 102 N. W. (2d) 497; Marsolek v. Miller Waste Mills, 244 Minn. 55, 69 N. W. (2d) 617; and fix the liability of the employer and his compensation insurer therein so that no additional liability can thereafter be imposed upon the employer by statutory amendments or otherwise. Yaeger v. Delano Granite Works, *supra*; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761; 58 Am. Jur., Workmen's Compensation, § 73.

■ Accordingly, it is clear in the instant case that when the employee sustained his second injury on September 2, 1959, his right to compensation as well as his employer's liability therefor were governed by Minn. St. 176.13(a, b, c) as it became effective on April 29, 1957. Thereunder the employee was entitled to recover compensation from the employer rather than from the special compensation fund for the permanent total disability which resulted from the com-

bined effects of his preexisting physical impairment and the subsequent injury which he sustained. The employer in turn was entitled to reimbursement from the special compensation fund for all compensation paid therefor in excess of the first 104 weeks thereof, provided the registration requirements of § 176.13(c) had been complied with by the employer before the subsequent injury. But it is undisputed here that the employer did not formally comply with such registration requirements or notify the commission that it might want to claim reimbursement for compensation paid in the event of the employee's subsequent injury or death.

■ Relator contends, however, that the commission's actual knowledge of the facts with respect to the employee's preexisting disability, as well as the employer's own knowledge thereof, would suffice to constitute substantial compliance with the statutory registration requirements so as to qualify it for the reimbursement prescribed by this section. This same argument was advanced in McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519, on facts similar in many respects to those here involved. There, as here, an employee with a preexisting physical impairment was hired prior to the amendment to § 176.13 which became effective on April 29, 1957. There, as here, the subsequent injury sustained by the employee occurred after such enactment. There, as here, the employer failed to formally register such employee with the commission as required by § 176.13(c), although in the McGuire case it appears the employer was not aware of such preexisting physical impairment. There, as here, at no time was the commission informed of any intent on the part of the employer that it would claim reimbursement from the special compensation fund for any subsequent injury to the employee. There, as here, the commission's records disclosed that the employee had a preexisting physical impairment at the time he was employed by the employer and that he had been paid compensation therefor. There, as here, the employer and insurer claimed that registration under § 176.13(c) should be excused because the Industrial Commission had in its files at the time of the 1957 amendment full particulars concerning the employee's preexisting physical impairment.

There, with respect to this contention, this court stated (258 Minn. 348, 104 N. W. [2d] 528):

"\* \* \* The statute itself (§ 176.13[c]) provides for no such substitute or excuse. Its language is clear and mandatory.

\* \* \* \* \*

"The procedural requirements in the statute to regulate registration cannot qualify or limit the substantive law unless clearly so stated or implied. It does not appear from the record that the employee's physical impairments were excepted from registration.

\* \* \* \* \*

"Under the circumstances, the employer, having failed to register, cannot resort to the state's special compensation fund."

Based upon this decision we have no choice but to affirm the commission's order of October 2, 1962.

Affirmed.