Richard W. **PATTON**, Respondent,

v.

**THOMPSON ELECTRIC COMPANY and St. Paul Fire & Marine Insurance Company, Relators.**

No. C9-87-1865.

Supreme Court of Minnesota.

March 18, 1988.

Michael D. Aafedt, Robin D. Simpson, Minneapolis, for relators.

Robert C. Falsani, Daniel C. Berglund, Duluth, for respondent.

WAHL, Justice.

This is an appeal from a Workers' Compensation Court of Appeals' decision affirming a compensation judge's award of temporary partial disability compensation. We affirm.

The facts are not in dispute. Richard W. Patton (employee) injured his back on March 23, 1984, in the course and scope of his employment with Thompson Electric Company as a working foreman. Thompson Electric and its workers' compensation insurer admitted primary liability for the March 1984 injury and paid temporary total disability compensation. Employee eventually returned to work full time for Thompson Electric but in a different position at a reduced wage. Thompson Electric and its insurer then paid temporary partial disability compensation. Subsequently, employee reached maximum medical improvement, and he was served with the maximum medical improvement report and notice of intention to discontinue temporary partial disability compensation. Thompson Electric and its insurer paid impairment compensation for a 4% permanent partial disability and agreed to pay an additional 3% permanent partial disability. The matter was ultimately heard by a compensation judge who denied the petition to discontinue temporary partial disability compensation. On the appeal of Thompson Electric and its insurer, the Workers' Compensation Court of Appeals affirmed. We agree with the conclusion of the courts below that an employee, who is working at a suitable job but at a reduced wage and who is paid impairment compensation, is also entitled to temporary partial disability compensation so long as the disability shall warrant.

The 1983 amendments to the workers' compensation law (new law), in large part, center upon the concept referred to as "maximum medical improvement." When, after a work injury, maximum medical improvement occurs, two other events will then take place:

First, the employer/insurer serves a maximum medical improvement report upon the employee. This starts the 90–day period after which temporary total disability benefits stop unless the employee is involved in an approved retraining program. Minn.Stat. § 176.101, subd. 3e(a).

Second, the employee either receives, or does not receive, a suitable job offer within the 90 days of service of the maximum medical improvement report or completion of a retraining program. If the employee receives a suitable job offer, he/she is entitled to "impairment compensation." If no suitable job offer is made, the employee is entitled to receive "economic recovery compensation" which is significantly higher than impairment compensation. Both impairment and economic recovery compensation are based on a rating of permanent partial disability. They essentially replace what was formerly known as permanent partial disability compensation and comprise what is now called the "two-tier" benefit system.

In this case, the employee started working at a suitable job prior to reaching maximum medical improvement but at a wage loss. Minn.Stat. § 176.101, subd. 3f.[1] His

1. Minn.Stat. § 176.101, subd. 3f (1984) provides:

Subd. 3f. Job prior to maximum medical improvement. If the employer offers a job prior to the employee reaching maximum medical improvement and the job is consistent with an approved plan of rehabilitation or if no rehabilitation plan has been approved and the job is within the employee's physical limitations; or the employer procures a job for the employee with another employer which meets the requirements of this subdivision; or the employee accepts a job with another employer which meets the requirements of this subdivision, the employee's temporary total compensation shall cease. In this case the employee shall receive impairment compensation for the permanent partial disability which is acertainable at that time. This impairment compensation shall be paid at the same rate that temporary total compensation was last paid. Upon reaching maximum medical improvement the provisions of subdivisions 3e or 3p apply, whichever is appropriate, and economic recovery compensation or impairment compensation is payable accordingly except that the compensation shall be offset by impairment compensation received under this subdivision.

temporary total benefits were then replaced by temporary partial benefits to compensate for that wage loss. Minn.Stat. § 176.101, subd. 3h.[2] Pursuant to Minn. Stat. § 176.101, subd. 2[3], temporary partial benefits are to be paid during the period of partial disability except as provided by Minn.Stat. § 176.101. The only exception in section 176.101 is found in subdivision 3n which denies temporary partial benefits when the employee has been offered a job under subdivision 3e, refuses the offer and subsequently finds other employment at a wage loss. That exception does not apply to employee Patton's case.

There is no specific provision in the statute describing the time at which temporary partial benefits must cease. The statute only provides that such benefits are payable to a claimant like employee who has accepted a 3e job, is partially disabled and is working at a wage loss. Thompson Electric and its insurer argue that because temporary total benefits cease 90 days after maximum medical improvement, temporary partial benefits must also cease. They thus are claiming that at the end of the 90–day period post-maximum medical improvement, the employer/insurer are to only pay either economic recovery compensation or impairment compensation depending on whether the employee has a suitable job. As the employee points out, however, if the legislature had intended such a "major change" in the way temporary partial benefits were to be paid, the legislature would have put that in the new law.

The employer/insurer can claim the benefits of the lower liability of impairment compensation if the employee has a suitable job post-maximum medical improvement. A suitable job is one an employee can do in his/her physical condition, and it must produce an economic status as close as possible to that which the employee would have enjoyed without the work injury. Minn.Stat. § 176.101, subd. 3e(b). When the employee is working at a physically suitable job but at a wage loss, it cannot be deemed suitable economically without temporary partial disability compensation. We therefore conclude, as did the compensation judge and Workers' Compensation Court of Appeals, that an employee such as Patton is entitled to temporary partial benefits 90 days past maximum medical improvement.

Affirmed.

Employee is awarded $400 in attorney fees on appeal.

---

In 1986, this provision was amended in ways not relevant to this case. 1986 Minn.Laws ch. 461, §§ 8, 9.

**2.** Minn.Stat. § 176.101, subd. 3h (1984) provides:

Temporary partial disability compensation. An employee who accepts a job under subdivision 3e or subdivision 3f and begins that job shall receive temporary partial compensation pursuant to subdivision 2, if appropriate.

**3.** Minn.Stat. § 176.101, subd. 2 (1984) provides:

Temporary partial disability. In all cases of temporary partial disability the compensation shall be 66⅔ percent of the difference between the weekly wage of the employee at the time of injury and the wage the employee is able to earn in the employee's partially disabled condition. This compensation shall be paid during the period of disability except as provided in section 176.101, payment to be made at the intervals when the wage was payable, as nearly as may be, and subject to a maximum compensation equal to the statewide average weekly wage.