**William F. GIESE, Respondent,**

v.

**GREEN GIANT COMPANY and the Travelers Insurance Company, Respondents (C6–87–2424), Relators (C6–87–2438),**

**and**

**City of Blue Earth, Self–Insured, Relator (C6–87–2424), Respondent (C6–87–2438).**

**Nos. C6–87–2424, C6–87–2438.**

Supreme Court of Minnesota.

Aug. 5, 1988.

Terry W. Viesselman, Fairmont, for Giese.

Joseph J. Grill, Minneapolis, for Green Giant and Travelers.

Andrew J. Morrison, St. Paul, for City of Blue Earth.

## OPINION

COYNE, Justice.

We review on certiorari a decision of the Workers' Compensation Court of Appeals which affirmed, by majority decision, an award of temporary partial compensation and attorney fees and denied statutory apportionment for a preexisting condition. With the exception of the award of temporary partial compensation, we affirm.

William F. Giese was employed by Green Giant Company on March 9, 1978, when he fell from a loading dock at work and injured his low back. On August 31, 1984, while employed by the City of Blue Earth, the employee again injured his low back while attempting to lift a heavy scaffolding plank. On September 27, 1984 he began to miss time from work because of this injury; and on October 22, 1984, he underwent a lumbar laminectomy. The employee thereafter sought workers' compensation benefits from both employers claiming temporary total compensation from September 27, 1984, as well as permanent partial compensation for a stipulated 10% whole body impairment.

The compensation judge found that the employee was temporarily totally disabled from September 27, 1984 to December 7, 1984, when he was authorized to return to work with restrictions. The employee was served with notice of maximum medical improvement on November 20, 1985. He has permanent restrictions as a result of the 1978 and 1984 work injuries; however, he has not been classified as permanently totally disabled, and he does not claim such status.

The compensation judge awarded temporary total benefits from September 27, 1984, to 90 days after notice of maximum medical improvement on November 20, 1985, and thereafter temporary partial benefits, continuing as long as the wage loss warranted, at the temporary total rate. He allocated responsibility for the temporary benefits 50% to the 1984 injury and 50% to the 1978 injury. He also found that any preexisting condition which the employee may have had prior to the 1984 injury was not clearly evidenced in medical records

prepared before the 1984 injury pursuant to Minn.Stat. § 176.101, subd. 4a (1984) and ordered the City to pay 100% of the economic recovery compensation that was payable for the stipulated 10% permanent whole body impairment. Finally, the compensation judge found the dispute to be primarily between the employers as to liability and awarded attorney fees pursuant to Minn.Stat. § 176.081, subd. 8 (1984).

Green Giant along with its workers' compensation liability insurer, Travelers Insurance Company, and the City of Blue Earth, self-insured, appealed. The Workers' Compensation Court of Appeals, in a decision filed November 20, 1987, affirmed the compensation judge's decision in all respects. Green Giant/Travelers and the City have sought further review by this court.

■ The initial issue raised by this appeal concerns the award of temporary partial compensation. In *Parson v. Holman Erection Company*, 428 N.W.2d 72 (Minn.1988), we held that on cessation of an employee's entitlement to temporary total compensation 90 days after service of the maximum medical improvement report or after the end of an approved retraining plan, an employee who is unemployed is not entitled to temporary partial compensation at the temporary total rate. Accordingly, the award of temporary partial compensation in this case must be reversed.

The self-insured City also challenges the determination that the employee's disability is not subject to apportionment pursuant to legislative mandate. For injuries which occurred before January 1, 1984, apportionment was not allowed when a work-related injury aggravated, accelerated or combined with a non-work-related pre-existing condition to produce a disability. *Wallace v. Hanson Silo Company*, 305 Minn. 395, 235 N.W.2d 363 (1975); *Byrd v. State, Department of Administration*, 305 Minn. 398, 234 N.W.2d 589 (1975); *Vanda v. Minnesota Mining and Mfg. Co.*, 300 Minn. 515, 218 N.W.2d 458 (1974). This result was altered by Minn.Stat. § 176.101, subd. 4a

(1984)[1] which allows the compensation payable for a permanent partial disability to be reduced by the proportion of the disability attributable to a preexisting disability arising from a congenital or traumatic incident. The preexisting disability may be work-related or non-work-related. An employer/insurer cannot take advantage of this provision, however, unless the preexisting disability is clearly evidenced in a medical report or record made prior to the current personal injury.

■■■ The compensation judge in this case determined that the employee's disability was not subject to statutory apportionment because his pre–1984 disability was not clearly evidenced in medical records made prior to the 1984 injury. The Workers' Compensation Court of Appeals agreed, and so do we. *See* Minn. R. 5223.0250.

Green Giant/Travelers and the self-insured City have also challenged certain findings of the compensation judge. We have scrutinized this record and are completely satisfied that the findings, as affirmed, are not manifestly contrary to the evidence. *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54 (Minn.1984); *Egeland v. City of Minneapolis,* 344 N.W.2d 597 (Minn.1984).

Affirmed in part, reversed in part.

Employee is awarded $400 in attorney fees.

YETKA, Justice (dissenting).

I believe that the issues raised by this case are settled by our decision in *Patton v. Thompson Elec. Co.,* 420 N.W.2d 596 (Minn.1988). In that case, the employee injured his back on March 23, 1984—after an overhaul of the workers' compensation laws in 1983. The employer paid temporary total disability until employee went back to work for the same employer, but in a different position and at a reduced wage. The employer paid temporary partial disability benefits until the employee reached maximum medical improvement and thereafter sought a discontinuance of the temporary partial disability benefits. A workers' compensation judge's denial of the petition for discontinuance was upheld by the Workers' Compensation Court of Appeals and by this court. We held that an employee who is working at a suitable job, but at a reduced wage, and who is paid impairment compensation is also entitled to temporary partial disability compensation so long as the disability warrants.

The only differences between the *Patton* case and this case are that the entire injury in *Patton* occurred after the 1983 amendments to the workers' compensation law and that Giese has neither been offered suitable employment by his employer nor has he found such employment. I submit that these differences enhance, rather than weaken, Giese's entitlement to temporary partial disability benefits.

The parties agree that the purpose of the current law is both to encourage employees to return to work and to encourage employers to offer injured employees suitable work. To effectuate that purpose, the statute provides that, if an employee receives a suitable job offer, he or she is entitled to receive impairment compensation pursuant to Minn.Stat. § 176.101, subd. 3b (1984) along with the temporary partial disability payments. *See Patton,* 420 N.W.2d at

1. Minn.Stat. § 176.101, subd. 4a (1984), added in 1983, provides:

(a) If a personal injury results in a disability which is attributable in part to a preexisting disability that arises from a congenital condition or is the result of a traumatic injury or incident, whether or not compensable under this chapter, the compensation payable for the permanent partial disability pursuant to this section shall be reduced by the proportion of the disability which is attributable only to the preexisting disability. An apportionment of a permanent partial disability under this subdivision shall be made only if the preexisiting disability is clearly evidenced in a medical report or record made prior to the current personal injury. Evidence of a copy of the medical report or record upon which apportionment is based shall be made available to the employee by the employer at the time compensation for the permanent partial disability is begun.

(b) The compensable portion of the permanent partial disability under this section shall be paid at the rate at which the entire disability would be compensated but for the apportionment.

597–98. However, if no job offer is made, the employee is entitled to receive economic recovery compensation, which is substantially higher than impairment compensation. The employer argues that an employee who does not receive an appropriate job offer is entitled to receive *only* the higher economic recovery compensation as a wage loss replacement. This interpretation ignores the clear language of Minn.Stat. § 176.021, subd. 3 (1984), which reads in relevant part:

> Economic recovery compensation or impairment compensation is payable for functional loss of use or impairment of function, permanent in nature, and payment therefore shall be separate, distinct, and in addition to payment for any other compensation, subject to section 176.101.

Thus, the statute does not bar the employee from recovering temporary partial disability in either situation, that is, when the employee has or has not received a new employment opportunity.

In addition, it makes little sense to me to provide that an employee who goes back to work may be entitled to temporary partial disability benefits whereas one who has not gone back to work because his employer has not offered him suitable employment is not. The employer who makes no attempt to assist the injured employee in securing appropriate employment is, therefore, required to compensate only for the employee's impairment of bodily function while making no compensation for the employee's complete loss of wages. An employer who *does* rehire an injured employee, on the other hand, is required to compensate for both the loss of impairment and lost wages. Such an interpretation discourages employers from rehiring an injured employee. This makes an absurdity of the statute.[1]

Further, we have held in *Joyce v. Lewis Bolt & Nut Co.*, 412 N.W.2d 304 (Minn. 1987), *appeal dismissed,* — U.S. —, 108 S.Ct. 1001, 98 L.Ed.2d 968 (1988), that an employee injured after the 1983 legislative revision to the workers' compensation law is not entitled to on-going *total* disability benefits, but was entitled to only those economic recovery benefits provided in the 1983 act. However, *Joyce* did not deal with *temporary partial disability* benefits nor has the legislature indicated a desire to change the law as to those benefits. In fact, Minn.Stat. § 176.101 (1984) does not limit the payment of temporary partial disability benefits to the 90–day period following maximum medical improvement as it does in the case of temporary total benefits. *Compare* Minn.Stat. § 176.101, subd. 3e(a) (1984). I would decline to read into the statute a limitation that is not there. Surely, if the legislature had intended to limit these benefits, it could have done so in clear and unequivocal language as it did in regard to temporary total benefits. The legislature, rather than the court, remains in a position to do so.

Finally, one of Giese's injuries occurred in 1978 while the state was operating under the pre–1983 or "old" law which clearly allowed temporary partial disability benefits to be made indefinitely whether or not the employee had in fact returned to work. Here, the original significant injury was in 1978. It was aggravated by a consequential injury in 1984, a continuance of the earlier injury. Thus, it can be seriously argued that the original injury is the controlling event and the employee's rights are governed by the old law. *Joyce,* 412 N.W. 2d at 308.

Because I would hold that the original 1978 injury was a significant one contributing to the present disability of the employee and because the expert testimony available indicates that 50% of the current disability was triggered by that event, following the reasoning used in allowing temporary partial disability benefits, an apportionment of benefits between the two em-

---

**1.** It is important to note that an employee may not, under the statutory system, elect to refuse an offer of employment in order to secure both the higher economic recovery and temporary partial compensation. Indeed, an employee who refuses a job offer gets only impairment compensation, with other substantial penalties imposed. *See* Minn.Stat. § 176.101, subd. 3*l* (1984).

ployers here should be available under Minn.Stat. § 176.101, subd. 4a (1984). Therefore, I would reverse the Workers' Compensation Court of Appeals solely on that issue.

WAHL, Justice (dissenting).

I join the dissent of Justice Yetka.

POPOVICH, Justice (dissenting).

I join in the dissent of Justice Yekta.